LEMMON, Justice.
The issue in this case is whether plaintiff corporation, who obtained as seller in an act of sale the right to use the lower floor of a particular building for the duration of its corporate existence, loses that right by the expiration of 30 years.
In 1921 the State of Louisiana acquired from plaintiff a building in New Orleans known as the Jackson' House. As partial consideration for the sale plaintiff was given the use of the ground floor of the Jackson House for its meetings and for the exhibition of historic objects.[1]
*942 Plaintiff used the premises without interruption until 1935 or 1936 when the building, which had fallen into disrepair, was rebuilt. During the reconstruction the state provided plaintiff free use of another public building for its activities.[2] When construction was complete, plaintiff reoccupied the premises and remained there until 1965 when fire hazards required the state to perform extensive renovations. Again the state provided plaintiff with free use of another building during construction.
After renovation of the Jackson House the State Museum Board notified plaintiff that its right to use the premises had prescribed and that the ground floor of the Jackson House would be returned to public use. The state did offer, however, to provide plaintiff with other free accommodations for its meetings.
Plaintiff then filed this suit, seeking a declaratory judgment recognizing its entitlement to the occupancy and use of the ground floor of the Jackson House. The state filed an exception of no cause of action, arguing that the right granted in the 1921 act of sale was a “right of use” or a “usufruct” and that, because the plaintiff is a corporation, the right in its favor had expired under C.C. Art. 612 after 30 years, that is, in 1951.[3] The trial court maintained the state’s exception and dismissed the action.
The court of appeal reversed, holding that plaintiff is entitled to the use of the ground floor of the Jackson House subject only to the limitations and obligations imposed upon the corporation by the contract granting that right. 395 So.2d 455. The court of appeal reasoned that the act of sale did not create a usufruct, but rather a personal right governed only by the rules of contract so that the 30 year limitation of usufructs held by corporations was inapplicable. We granted certiorari. 399 So.2d 607.
In determining that the right granted by the contract was not a “use" or a “usu-fruct”, the court of appeal relied heavily upon the fact that the right did not include the entitlement to “fruits”, “profits” or any other “advantage” which might be produced by the premises nor the obligation of a usufructuary to pay taxes and repair the premises.[4] The court also suggested that the state’s obligation to provide alternative accommodations to plaintiff in the event of the destruction of the Jackson House also characterized the right as something other than a usufruct or use.
In Lasyone v. Emerson, 220 La. 951, 57 So.2d 906 (1952), this court was faced with a similar fact situation. In that case a ven *943 dor sold an undivided one-half interest in a lot and building to a Louisiana corporation. The act of sale provided that the “[v]endee shall have the use, without rental, of the lower story of the two story brick building situated on said property, to assume the upkeep, repairs and improvements of said lower story as needed.” A later purchaser of the vendor’s undivided one-half interest sued for partition. This court held that the language in the act of sale created a usu-fruct and that the usufruct granted the corporation had terminated under C.C. Art. 612 upon the lapse of 30 years.
Although in Lasyone the contract expressly provided that the corporation was obligated to assume responsibility for upkeep and repairs, the right granted in that contract is essentially the same as the right created by the contract in the instant case. The corporation did not receive any “fruits”, “profits” or “advantages” other than the free use of the premises. The fact that the corporation agreed in the contract to assume responsibility for the upkeep and repairs of the premises does not sufficiently distinguish the right from that granted plaintiff in the instant case.
Even if the right granted in the present case does not precisely comply with all codal requirements for either a right of use or of usufruct, the parties clearly intended that the right was a real right in particular immovable property. The actual right, whatever its legal denomination, is sufficiently similar to use or usufruct that it should be governed by the codal limitations and provisions relating to such rights, applied by analogy.[5] Compare Farrell v. Hodges Stock Yards, Inc., 343 So.2d 1364 (La.1977).
A usufruct in favor of a natural person generally terminates upon the death of the usufructuary. The underlying policy for limiting the right of a corporation to a real right such as a usufruct is to prevent a legal entity, which does not have a natural life span, from possessing rights in immovable property in perpetuity. The reason for the limitation on the term of a usufruct is explained:
“The dismembership of ownership [which occurs in a usufruct] may render great service, under certain circumstances. It however creates a state of affairs which is unfortunate. The law does not want it to continue.” 1 M. Planiol, Traité Élém-entaire de Droit Civil, § 2838 (La.St.L. Inst.Trans.1959).
The codal provision limiting usufructs in favor of corporations accords with the public policy against holding property out of commerce. See Frost-Johnson Lbr. Co. v. Sailing’s Heirs, 150 La. 756, 91 So. 207 (1922); Gueno v. Medlenka, 238 La. 1081, 117 So.2d 817 (1960). If the right of use claimed by plaintiff in this case is permitted to continue for the duration of plaintiff’s corporate existence (which may bé perpetual), then the contractual provision will effectively take the ground floor of the Jackson House out of commerce indefinitely and perhaps perpetually.
We conclude that the parties to the 1921 contract intended to grant a species of use which conferred a real right in particular immovable property similar to the right of use or usufruct and that the right granted in the contract is extinguished in the same manner as the right of use and usu-fruct.[6] Although the parties may also have intended that the right be permanent, the law limited the duration of such rights as a matter of public policy. The right granted *944 in the sale was therefore extinguished by the passage of 30 years.
Accordingly, the judgment of the court of appeal is reversed, and the judgment of the trial court is reinstated.

. The pertinent part of the sale provided:
“And as a further consideration of said sale, the Board of Curators of the State Museum hereby agrees to give to the United States Daughters of 1776 and 1812, the use of the ground floor of the premises herein conveyed, said use to continue as long as the said Association shall continue its corporate *942 existence, and shall desire to continue to occupy the said premises, subject however, to the condition that no stoves, fires, or other elements liable to increase the fire hazard, shall be used in the said building for cooking purposes, and if the said Board of Curators shall provide a heating system, then none other shall be used for heating purposes; and the said United States Daughters of 1776 and 1812 shall put nothing in the said premises which shall increase the fire hazard; that it shall not use the said premises for other purposes than the exhibition of historic, art and literary objects and especially those pertaining to the wars of 1776 and 1812, and for its meetings, conventions and entertainments.”

.As to use of other property during reconstruction, the sale provided:
“It is also agreed that in the event of the destruction of the said premises by a fortuitous event, or for reconstruction, improvement or other purposes, the said Board of Curators shall afford said United States Daughters of 1776 and 1812, meeting and exhibition rooms in the State Museum of equal size and facilities; but no reconstruction or improvement, the effect of which shall be to deprive said United States Daughters of 1776 and 1812 of the permanent right of use herein given, shall be made without their consent, and in any improved or reconstructed building they shall be entitled to the use of rooms equally as suitable for their purposes as herein set forth as the ones now existing.”

. At the time of the sale, C.C. Art. 612 limited usufructs in favor of corporations to 30 years. That provision now appears as C.C. Art. 608.

. C.C. Art. 544 provides that fruits produced during the usufruct belong to the usufructuary; C.C. Art. 533 provides that the usufructuary is entitled to profit, utility and advantage produced; and C.C. Art. 571 imposes the obligation on the usufructuary to make needed repairs.

. The fact that the state, in addition to granting the right to use the Jackson House, agreed to provide alternative accommodations does not change the character of the right granted. Plaintiffs personal contractual right to demand alternative lodging from the state is an ancillary right, unrelated to the right plaintiff now seeks to enforce.

. A right of use under the present law is perhaps not automatically extinguished after 20 years. See C.C. Art. 644 (as amended in 1976). However, under the law in effect at the time of this contract a right of use was extinguished in the same manner as usufruct. See former C.C. Art. 628. When the 1976 amendments were enacted, more than 30 years had elapsed since the right was created by the contract in this case.